KING & ANDERSON, INC., v. RITCHIE.

(Division B.   Jan. 4, 1932.)

[138 So. 581.   No. 29670.]

Brewer & Brewer, of Clarksdale, for appellant.

Roberson & Cook, of Clarksdale, for appellee.

Argued orally by **Ed. Brewer**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

Ritchie was complainant, and filed a bill in the chancery court against King & Anderson, Inc., a nonresident corporation owning property in Clarksdale, Mississippi, alleging that under a contract with King & Anderson, Inc., he was entitled to recover five per cent commission on the aggregate rents of a ten-year rental contract by which King & Anderson, Inc., rented to Morgan & Lindsey a certain building on Yazoo street in Clarksdale, Mississippi.

It appears that Ritchie saw a report in some paper that Morgan & Lindsey were conducting retail stores at different points, and at some point in Louisiana had made a contract to operate a store there. Ritchie got in communication, through a friend, with Morgan & Lindsey with the view of inducing them to locate a store in Clarksdale, Mississippi. The letters passing between them seem to have favorably impressed Morgan & Lindsey with Clarksdale, and they expressed an interest in Clarksdale and a willingness to look into the proposition. Ritchie then took up with King & Anderson, Inc., the proposition of building a store to lease for a period of twenty years to Morgan & Lindsey, the store to be of such character as they desired. King & Anderson, Inc., owned vacant property in Clarksdale, and they expressed a willingness to negotiate and to erect a building, but they were unwilling to execute a lease for a longer period of time than ten years. Considerable correspondence passed between Ritchie and Morgan & Lindsey, and through Ritchie's efforts they finally submitted a blueprint showing the character of store they desired and the kind of front they desired it to be fitted with. After corresponding with Ritchie, they finally agreed to take a store such as King & Anderson were contemplating

erecting for a ten-year lease, and agreed to take it any time within ten months after the building was completed. It appears that King & Anderson, Inc., were not willing to sign up a lease contract until the building was erected. According to the complainant, Ritchie, they agreed to erect the building, but did not want to begin at once. The negotiations were begun in June, and it was February following before the building was actually constructed.

However, after the correspondence and negotiations between Ritchie and Morgan & Lindsey, a representative of Montgomery Ward & Co. came to Clarksdale at the instance of Mr. Peevy, who was connected with one of the banks, and the bank desired to erect a building and thought probably Montgomery Ward & Co. would be interested in a store building in connection with the bank. Mr. Ritchie was co-operating with Mr. Peevy in the matter, and it appears that the Montgomery Ward & Co. representative did not desire to contract with the bank or Mr. Peevy, and that Mr. Ritchie took up with them the proposition of leasing a building from King & Anderson, Inc., having in view King & Anderson, Inc., erecting a building for said proposition. King & Anderson, Inc., were not willing to erect a new building, but expressed a willingness to negotiate with reference to the building they were then constructing and which Ritchie had been negotiating for Morgan & Lindsey. The contract was finally drawn up between the representative and King & Anderson, Inc., for lease of said building for a term of years and a contract prepared which was sent to the office of Montgomery Ward & Co. in Chicago, but the contract was not approved, and this deal fell through.

Thereafter a representative of J. C. Penney Company came to Clarksdale and got in touch with Ritchie and was looking for a location. Ritchie took up with King & Anderson, Inc., a proposition to rent, or erect, a building

for J. C. Penney Company, and a contract was drawn up between King & Anderson, Inc., and the J. C. Penney Company and forwarded to the home office of that company for approval or rejection. That company rejected the contract.

It is admitted in the negotiations between Montgomery Ward & Co. and King & Anderson, Inc., that King & Anderson, Inc., did not agree to pay a commission to Ritchie, and that Ritchie rendered whatever service he did in that regard voluntarily with the view of securing Montgomery Ward & Co. a location at Clarksdale. In the negotiations between J. C. Penney Company and King & Anderson, Inc., handled by Ritchie, it was agreed by King & Anderson, Inc., that they would pay a commission of five hundred dollars to Ritchie for his service if the lease went through.

After the negotiations between Ritchie and Morgan & Lindsey, and after they had apparently quit corresponding with reference to the matter, but after Morgan & Lindsey had agreed, according to the proof, to take the building for a ten-year period on the terms named, another real estate firm in New Orleans took up with King & Anderson, Inc., the proposition of leasing their store for a term of years, and a contract was finally consummated by which King & Anderson, Inc., leased the property involved to Morgan & Lindsey. By this lease contract Morgan & Lindsey were to pay King & Anderson, Inc., a rental in advance of three hundred seventy-five dollars per month for the first five-year period of the lease and a monthly rental of four hundred dollars for the second five-year period, with a further agreement that, if in any calendar year the gross sales of Morgan & Lindsey Chain Stores exceeded the sum of one hundred thousand dollars, the lessee would pay as additional rental an amount equal to four per cent on all additional gross sales over one hundred thousand dollars.

After the store was completed, and after the contract

had been made, Ritchie took up with King & Anderson, Inc., the payment of his commission, which they refused to do, contending that he had no commission rightfully due him. Ritchie's testimony showed that in the negotiations entered into on the 24th day of June, King & Anderson, Inc., agreed to pay him a commission, but the amount of the commission was not specified. The testimony for the defendants showed that the proposed contract with J. C. Penney Company was a more favorable one to King & Anderson, Inc., than the present one, and that Ritchie agreed to handle that for a commission of five hundred dollars. It was Ritchie's contention that, although he did this, the parties were on the ground ready to close the deal, and that it did not require effort and negotiations of any length for him to close that deal, and that he had a right to cut his commissions. He testified that five per cent of the rental value of the property for the term of the lease was a reasonable fee or commission. It appears, however, that neither he nor any other real estate dealer had had experience in leasing business property of this kind under the conditions and circumstances existing in the present case.

One witness for the defendants, King & Anderson, Inc., testified that five hundred dollars would be a reasonable fee, and another that two hundred fifty dollars, in his opinion, would be a reasonable fee.

The chancellor allowed five per cent on the total monthly rentals for the entire ten-year period, amounting to two thousand three hundred twenty-five dollars, with six per cent interest, the total amount aggregating two thousand four hundred eighty-nine dollars and twenty-two cents, from which judgment this appeal is prosecuted.

We think the chancellor was in error in rendering the five per cent commission on the full rental value of the lease, but that the five per cent commission should have been limited to the present value of the lease, and this is the maximum that could reasonably be allowed under

the facts in this case. We think, under the evidence in this record, that five per cent on the total lease value, without finding its present value, but calculating it on 'the gross amount that would be realized at the end of ten years, is excessive and unreasonable. The judgment 'of the court below will therefore be reversed, and the cause remanded, with directions to find the present value of the rent contract as of the date of the filing of the suit.

Reversed and remanded.